

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00130-CR

Joshua **ORCASITAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR7776
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  May 20, 2015

AFFIRMED

Joshua Orcasitas, appellant, was convicted of murder and sentenced to twenty years in prison. On appeal, appellant argues that his conviction should be reversed because the prosecutor engaged in improper jury argument during the guilt-innocence phase of trial. Appellant also argues that he should be afforded a new trial on punishment because the evidence was legally and factually insufficient to support the jury's negative finding on the issue of sudden passion arising from an adequate cause. We affirm.

**BACKGROUND**

On July 11, 2012, appellant's mother, Delilah Orcasitas, and her live-in boyfriend, Roger Hernandez, had an argument. The argument took place in a house that Delilah was renting in San Antonio, Texas. Delilah told Hernandez that he would have to move out of the house. Hernandez gathered his clothes and left. After Hernandez left, Delilah also left the house. Appellant, who was eighteen years old at the time, remained in the house with two of his siblings. While Delilah was gone, Hernandez returned to the house and then left again. According to one eyewitness, Hernandez was on the street walking away from the house, when appellant came out of the house and followed Hernandez onto the street. Appellant approached Hernandez, pulled a handgun out of the waistband of his pants, and pointed it at Hernandez's back. Hernandez then turned around and a confrontation ensued. Moments later, Hernandez had sustained a fatal gunshot wound and appellant was running away from the scene. A neighbor attempted to resuscitate Hernandez, but was unsuccessful. Police and emergency medical technicians were dispatched to the scene. Appellant, who made a 911 call and reported the shooting, was soon found by police and arrested.

Appellant was charged with murder, and the case was tried to a jury. At trial, the State set out to refute appellant's claim that he had shot Hernandez in self-defense.

The State's primary witness was Gary McCray, a neighbor who witnessed the shooting from about thirty or forty feet away. The shooting took place in the early evening, while there was still daylight. McCray testified that he saw Hernandez leave the house and walk across the street and away from the house. Appellant left the house and followed Hernandez, walking at a fast pace. Appellant pulled a gun from the front waistband of his pants and pointed it at Hernandez's back. Hernandez turned around while appellant was still pointing the gun at him and yelled, "You going to shoot me? You going to shoot me?" At this point, appellant was only two or three feet away from Hernandez. Hernandez did not throw a punch at appellant, nor did he kick him, choke him,

or pull a weapon on appellant. Hernandez tried to take the gun away from appellant but was unsuccessful. Hernandez grabbed the gun and pulled it down, and a shot went off. Appellant then hit Hernandez in the head with the gun. At that point, Hernandez was "real dazed" and "staggering around." As Hernandez staggered, his head was sagging and his hands were by his side. Hernandez came to a place on the street where he was three or four feet from the driveway of Delilah's house. Appellant still had the gun and he followed Hernandez. Appellant then pointed the gun at Hernandez's face and fired a second shot. Hernandez fell onto his back. Appellant ran back toward the house, toward the door he had exited from earlier. From inside the house, someone told appellant to run. Appellant then took off running down the street. According to McCray, Hernandez did not assault appellant or try to hurt him; Hernandez only tried to take the gun away from him.

The State called other witnesses, including the police officer who arrested appellant. According to this officer, appellant told him where to find the gun used in the shooting. A firearms expert testified that the gun recovered by the police was the gun used in the shooting. A crime scene investigator stated that when she arrived at the scene Hernandez's head and torso were in the driveway and his legs were in the street. The investigator also stated that she recovered two shell casings at the scene of the shooting. One of the shell casings was found under Hernandez's body; another was found in the middle of the street.

The medical examiner testified that during Hernandez's autopsy, she observed a gunshot wound to the left cheek, just in front of the ear. The burning and soot around the wound indicated it was sustained at close range. The gunshot wound caused Hernandez's death. The medical examiner also stated that Hernandez had an abrasion on the back of his head, two lacerations on the top of his head, a scratch on his hand, and bruising above and around his right eye. According to the medical examiner, the abrasion on the back of Hernandez's head was most likely caused

when he fell to the ground after being shot. The bruising around Hernandez's eye was consistent with being hit above the eye with a blunt object like the butt of gun, but it was also consistent with the type of hemorrhaging that might occur from a gunshot wound to the face. The medical examiner was convinced that the lacerations and abrasions had occurred close to the time of death because they showed no signs of healing. The medical examiner also mentioned that one of the items found in Hernandez's pocket was a "lock-blade" knife, which was in the closed and locked position.

The defense presented testimony from appellant's brother, Benjamin Orcasitas, who also claimed to have witnessed the shooting. Benjamin testified that he saw appellant leave the house shortly before the shooting. Hernandez and appellant argued, and Hernandez "got a hold" of appellant's neck. Hernandez had appellant by the neck and was choking him. Appellant looked scared, and Hernandez looked like he wanted to kill appellant. Appellant was struggling and falling down, when he pulled out a gun. When appellant and Hernandez were almost on the ground, Hernandez said to appellant, "F you, mother-f'er." Benjamin further testified that as the two struggled, "[T]he gun, it went up, and []—it went like this. I guess [appellant] hit [Hernandez] with it and then [appellant] shot [Hernandez]." According to Benjamin, the shooting happened while Hernandez was choking appellant. Hernandez was on top of appellant, who was leaning backwards.

Appellant also presented testimony from his mother, Delilah. Delilah testified that Hernandez was a violent person. Hernandez had convictions for assault and family violence. One of these convictions stemmed from Hernandez attacking his wife. Delilah also described several fights Hernandez had with her children in the past. Hernandez had a confrontation with her son, Benjamin, who was disabled and in a wheelchair. According to Delilah, Hernandez dragged Benjamin out of a truck, choked him, pushed him, and struck him. Hernandez was drunk at the

time. On another occasion, Hernandez fought with her eldest son, Eli, and had dislocated his shoulder. Delilah also stated that Hernandez weighed at least fifty pounds more than appellant. On the day of the shooting, it appeared to Delilah that Hernandez was intoxicated. After she kicked Hernandez out of the house and before the shooting, Delilah told appellant that Hernandez had threatened to burn down the house. Delilah also stated that Hernandez always carried a knife in his pocket.

On rebuttal, the State presented photographs of appellant taken just hours after the shooting and testimony from a crime scene investigator. The photographs showed that appellant had only a small, superficial scratch on the back of his neck. The crime scene investigator testified that appellant showed no signs of having been choked or having suffered any injury.

The jury was charged on the law of self-defense. As part of the self-defense charge, the trial court instructed the jury that the defendant's belief that deadly force was immediately necessary is presumed to be reasonable if the defendant (1) knew or had reason to believe that the person against whom deadly force was used: (a) unlawfully and with force entered or was attempting to enter unlawfully and with force the actor's occupied habitation, or (b) was attempting to commit murder; (2) the defendant did not provoke the person against whom force was used; and (3) the defendant was not otherwise engaged in criminal activity, other than a class C misdemeanor that was a violation of a law or ordinance regulating traffic at the time the force was used. The trial court further instructed the jury that the presumption of reasonable belief applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist.

The jury rejected appellant's self-defense theory, finding appellant guilty of murder as charged in the indictment. Additionally, during the punishment phase of trial, the jury made a negative finding on the issue of whether appellant acted under the immediate influence of sudden

passion arising from an adequate cause, and recommended that appellant be sentenced to twenty years in prison. The trial court sentenced appellant in accordance with the jury's recommendation.

**IMPROPER JURY ARGUMENT**

In his first issue, appellant complains about the State's jury argument during the guilt-innocence phase of trial. Specifically, appellant argues that the prosecutor engaged in improper jury argument by striking at him over the shoulders of defense counsel and by injecting law into the case that was not included in the trial court's charge to the jury.

### *Law on Jury Argument*

Proper jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; and (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). Any error resulting from improper jury argument is subject to a harm analysis. *See Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011). When jury argument falls outside the areas of proper argument, we must determine if the related error warrants reversal. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). When the error is non-constitutional, we must determine if the appellant's substantial rights were affected. *Freeman*, 340 S.W.3d at 728. To determine if an appellant's substantial rights were affected, we balance the severity of the misconduct, any curative measures, and the certainty of conviction absent the misconduct. *Id*.

### *Preservation of Error*

To preserve a complaint about improper jury argument for appellate review, the defendant should (1) make a timely and specific objection, (2) request an instruction to disregard if the objection is sustained, and (3) move for a mistrial if the instruction to disregard is granted. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Cooks v. State*, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992); TEX. R. APP. P. 33.1(a). A defendant forfeits his right to complain on appeal

about an improper jury argument if he fails to object to the argument or fails to pursue his objection to an adverse ruling. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). The "essential requirement" to ensure preservation is "a timely, specific request that is refused by the trial court." *Cruz*, 225 S.W.3d at 548; *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Moreover, the complaint argued on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

### *Complaints about the State's Jury Argument*

In his brief, appellant complains of three instances of alleged improper jury argument. We discuss each complaint separately.

#### *1. "Rabbit Trails"*

Appellant first complains about a comment made by the prosecutor during her initial closing argument. The prosecutor stated:

> I ask that you stay focused on that night, focused like a laser in your deliberations, ladies and gentlemen. Do not be confused by the rabbit trails the defense will try to send you on.

Appellant objected to this argument on the ground that the prosecutor was striking at the defendant over the shoulders of defense counsel. The trial court sustained this objection, instructed the jury to disregard the comment, and denied a request for a mistrial. Appellant has preserved this objection for our review.

According to the Texas Court of Criminal Appeals, final arguments that constitute uninvited and unsubstantiated conduct directed at a defendant's attorney are of special concern. *Mosley*, 983 S.W.2d at 258. The Court of Criminal Appeals has explained that in its most egregious form, this kind of argument may involve accusations of manufactured evidence or an attempt to contrast the ethical obligations of prosecutors and defense attorneys. *Id*. In its milder form, it

involves comments indicating that defense counsel was using argument to divert the jury's attention or obscure the issues. *Id*. The Court of Criminal Appeals has further explained that it is almost impossible to articulate a precise rule regarding this type of argument. *Id*. at 259. "[A] prosecutor runs a risk of improperly striking a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Id*. "We have indicated in the past that such mild comments may not be erroneous, so long as they can be interpreted as an attack on arguments made by the defense counsel." *Id*. at 258-59.

In *Hinojosa v. State*, the appellant argued that the prosecutor's use of terms like "tactics," "smoke and mirrors," and "hide the ball" amounted to a personal attack on defense counsel. 433 S.W.3d 742, 764 (Tex. App.—San Antonio 2014, pet. ref'd). We concluded that the prosecutor's arguments were not improper because they were made in response to defense counsel's closing arguments. *Id*. at 765. Here, the State argues that the comment in question was a response to the defense strategy of painting Hernandez as the initial aggressor and of vilifying Hernandez through the testimony of Benjamin and Delilah. We agree with the State that in this case the prosecutor's "rabbit trails" comment was made in response to the defense's theories and was therefore proper argument. *See Garcia v. State*, 126 S.W.3d 921, 925 (Tex. Crim. App. 2004) (concluding that the prosecutor did not engage in improper argument when he told the jury that defense counsel was "going to argue that hogwash that you've heard.").

### 2. Witnesses' Demeanor

Appellant next complains about a comment made during the State's rebuttal argument. The prosecutor stated:

> All right. Your biggest role is to judge the credibility of the witnesses. I'm not hiding that. That's cheating. Okay. I want you to do that.

Now, we talked a little bit about how in your daily lives you assess whether or not someone is credible or not. Let's talk about some of the things you can consider. Their body language, their facial expressions, their demeanor, their ability to give supporting details, if it's supported by some other evidence. And the big thing, motive to lie.

Let's talk about body language and facial expressions and demeanor altogether [sic]. Now, let's think about the witnesses that took the stand. Think about Gary McCray who sat here and told you his story. He sat here clearly scared. He didn't want to look at anybody. He just sat here, he told you the facts. You couldn't trip him up. His story stayed consistent from what he told the police that night to what he told Mr. Gross's investigator, who he didn't even know was working for the defense, and what he told you here on the stand. It is all consistent. That that boy walked up to Roger with a gun pointed at him. When Roger fought for his life, he was pistol whipped. And when he is walking around dazed and confused, Joshua Orcasitas walked up to him and shot him in the head. It is consistent throughout.

But now let's think about Delilah and let's think about Benjamin. When they sat here—and on cross-examination, whenever they got tripped up, I don't know if you caught it, but I did, they looked at Mr. Gross [defense counsel] to help them. Why are they looking at him?

Defense counsel then made the following objection: "I object to that, Your Honor. There is absolutely no evidence of that whatsoever. That's outside the record and it is completely false." The trial court overruled the objection.

Appellant now complains that this portion of the State's argument "compound[ed] the adverse attack on the ethics of defense counsel." We disagree. Contrary to appellant's complaint on appeal, the prosecutor's remark was an attack on the credibility of two defense witnesses, not an attack on defense counsel. The objection was made immediately after the prosecutor commented that Benjamin and Delilah looked at defense counsel when they "got tripped up" during cross-examination. The substance of appellant's objection was that there was "no evidence" to support the comment, and that the prosecutor's assertion that Benjamin and Delilah looked at defense counsel was "outside the record" and "completely false." Because appellant's current

complaint does not comport with the objection made at trial, we conclude that it presents nothing for our review. *See Wilson*, 71 S.W.3d at 349; *Thomas*, 723 S.W.2d at 700.

But even if appellant's complaint on appeal was consistent with his objection at trial, we would conclude the trial court properly overruled the objection. Jury argument as to the truthfulness of a witness's credibility is proper as long as it is based on the evidence presented and proper deductions from the evidence, including a witness's demeanor while testifying. *Hinojosa*, 433 S.W.3d at 763. "During jury argument, a party may allude to a testifying witness' demeanor if the jury had an equal opportunity to observe the witness." *Good v. State*, 723 S.W.2d 734, 736 (Tex. Crim. App. 1986) (emphasis omitted).

Here, the jury had the opportunity to observe Delilah and Benjamin during their testimony. Thus, it was proper for the prosecutor to comment on the conduct of these witnesses while they were testifying at trial. *See Hinojosa*, 433 S.W.3d at 763; *Good*, 723 S.W.2d at 736. We conclude that the comment was not improper and the trial court did not err in overruling the objection.

### 3. Law Outside the Charge

The prosecutor argued that appellant was not entitled to a presumption of reasonableness as to his asserted belief that deadly force was immediately necessary. First, the prosecutor argued that appellant was not entitled to the presumption because he provoked the confrontation. Second, the prosecutor argued that appellant was not entitled to the presumption because he was engaged in criminal activity higher than a class C misdemeanor. In particular, the prosecutor argued that at the time of the shooting appellant was unlawfully carrying a weapon and discharging a firearm in a municipality.[1] During the prosecutor's rebuttal argument, the following transpired:

---

[1]On appeal, the State takes the position that the offense of discharging a weapon in a municipality does not negate the presumption of reasonableness. We do not construe appellant's brief as raising this complaint, and therefore, we do not reach this issue.

Prosecutor:    When [the defendant] popped off that first shot in the City of San Antonio, that has a population of a million plus, he's committed that offense. This is important because the presumption of reasonableness as to his belief doesn't apply. He doesn't get the presumption because he started it, number one; and number two, because he's engaged in criminal activity higher than a Class C misdemeanor.

Defense counsel:  I object to that, Your Honor. There is no law in the Court's Charge to the jury that talks about anything like that. That's outside the Court's Charge and I object to that.

The Court:    It's overruled. You may proceed.

Additionally, during rebuttal argument, the prosecutor used a PowerPoint presentation to show the jury the elements of unlawful possession of a weapon and discharging a weapon in a municipality. After closing arguments, appellant objected that the State could not "flash statutes" on a screen during its closing argument and ask the jury to consider them. According to appellant, the only law the jury could consider was the law in the court's charge. Appellant then asked the trial court to instruct the jury that they could not consider any law other than the law in the charge. In response, the trial court gave the following instruction to the jury:

Ladies and gentlemen, I have not only read the law as it applies to this case, but you also will take the charge with you to the jury room. And I will instruct you that the only law that you will depend on is the charge itself.

And with that, you have all of the evidence before you. You have the law. So what I would like for you to do is go back to the jury room, select your foreperson, and begin your deliberations. You are excused.

In his brief, appellant complains that the prosecutor's argument was "completely improper since no instructions were given to the jury by the trial judge, and the trial judge overruled counsel's objections to this law that was outside the court's charge to the jury." Appellant also

complains about the State's use of PowerPoint slides to show the jury the elements of the offenses of unlawful carrying of a weapon and discharging a firearm in a municipality.[2]

As a preliminary matter, we note that appellant's brief fails to cite appropriate authority to support these complaints. Texas Rule of Appellate Procedure 38.1 requires that the argument in the appellant's brief include "appropriate citations to authority and to the record." *See* TEX. R. APP. P. 38.1(i). Because the complaints presented in appellant's brief are not supported with citations to appropriate authority, they present nothing for our review. *State v. Gonzalez*, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993) ("When a party raises a point of error without citation of authorities or argument, nothing is presented for appellate review."); *McWherter v. State*, 607 S.W.2d 531, 536 (Tex. Crim. App. 1980) (concluding that appellant's brief presented nothing for review when it failed to cite any authority for his argument concerning allegedly improper jury argument). The only cases cited by appellant to support these complaints involve situations in which the jury argument referred to evidence outside the record. *See, e.g.*, *Anderson v. State*, 633 S.W.2d 851, 855 (Tex. Crim. App. 1982); *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Appellant fails to cite us to any cases that involve situations in which the jury argument referred to law outside the charge.

We further note that appellant's "law outside the charge" complaints were not properly preserved in the trial court. The first objection came immediately after the prosecutor stated that appellant was not entitled to the presumption of reasonableness because appellant had "started it" and because he was engaging in criminal activity higher than a class C misdemeanor. Thus, the first objection was made immediately after the prosecutor referred to law that was contained in the

---

[2]Appellant made two other objections to parts of the prosecutor's argument referring to these offenses. However, in both instances, appellant objected that the prosecutor's comments were a "misstatement of the law." In his brief, appellant does not refer us to these objections, does not argue that the prosecutor misstated the law, and does not provide appropriate authorities for such an argument.

jury charge. The second objection was untimely. It was not made contemporaneously with the use of the PowerPoint slides, but after closing arguments were over. And, once the second objection was made, the trial court advised appellant's counsel that it would provide an instruction to address the objection and it advised him of the substance of the instruction before the instruction was given. At that point, appellant's counsel stated, "That will be fine, Your Honor." The trial court then gave the jury the instruction. The second objection was not only untimely, it was not pursued to an adverse ruling. We conclude there was no preserved error arising from improper jury argument.

*Harm Analysis*

Even if there had been error arising from improper jury argument, we could not reverse appellant's conviction unless the error affected his substantial rights. *Freeman*, 340 S.W.3d at 728. To determine if appellant's substantial rights were affected, we weigh the severity of the misconduct, any curative measures, and the certainty of conviction absent the misconduct. *Id.*

We first consider the severity of the alleged misconduct. As the Court of Criminal Appeals has acknowledged, arguments like the prosecutor's "rabbit trails" argument are—at most— "mildly inappropriate." *Mosley*, 983 S.W.2d at 260. Similarly, we believe that a remark concerning the conduct of testifying witnesses, even if inaccurate, is not severe. Jurors are certainly able to reach their own conclusions about testifying witnesses based on their own observations; they are not dependent on the prosecutor's characterizations. Finally, we believe the prosecutor's reference to the presumption of reasonableness was not severe misconduct in this case.

Second, we must consider any curative measures taken and the effectiveness of these measures. In this case, curative measures were taken in two instances. After sustaining the objection to the "rabbit trails" comment, the trial court instructed the jury to disregard the comment, and the prosecutor did not repeat the comment. After closing arguments were finished, appellant objected that the jurors could only consider the law in the court's charge and they could

not consider the law given to them by the prosecutor via PowerPoint. In response, the trial court instructed the jury that the only law it should depend on was the law in the jury charge itself. We are of the opinion that both of these curative measures were effective.

Finally, we must evaluate the certainty of conviction absent the allegedly improper jury argument. The evidence supporting appellant's conviction was compelling. An eyewitness, McCray, testified that immediately before the shooting appellant followed Hernandez into the middle of the street and pulled a gun on him while his back was turned. According to McCray's testimony, Hernandez turned around and tried to take the gun from appellant, but was unsuccessful. Appellant hit Hernandez with the gun, causing him to stagger and appear dazed. While Hernandez was still in this condition, appellant shot him at close range. The physical evidence in the case—the location of the shell casings and the injuries on Hernandez's body—tended to support McCray's account of the shooting and the events leading up to the shooting. Additionally, the jury was able to see photographs of appellant taken after the shooting, which showed that appellant had not suffered any injuries consistent with having been choked or having engaged in a struggle like one described by the defense's witness, Benjamin.

All of the factors relevant to a harm analysis weigh in favor of the conclusion that appellant was not harmed by the jury arguments in question. Therefore, even if there had been error arising from improper jury argument, it would be harmless. Issue one is overruled.

### JURY'S REJECTION OF SUDDEN PASSION

In his second and third issues, appellant argues the evidence was legally and factually insufficient to support the jury's negative finding on sudden passion arising from an adequate cause.

At the punishment phase of a murder trial, a defendant may reduce a murder charge from a first-degree felony to a second-degree felony by proving by a preponderance of the evidence that

he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d) (West 2011); *Smith v. State*, 355 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Sudden passion" is defined as "passion directly caused by and arising out of the provocation of the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02 (a)(2). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02 (a)(1).

Ordinary anger or causes of a defendant's own making are not legally adequate causes. *DeLeon v. State*, 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd); *Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Fear is only sufficient if the cause of the fear could produce fear that rises to a level of terror that makes a person of ordinary temper incapable of cool reflection. *DeLeon*, 373 S.W.3d at 650.

### Standards of Review

Because a defendant bears the burden to prove sudden passion arising from an adequate cause by a preponderance of the evidence, we review a legal sufficiency challenge to the jury's negative finding on this issue under the same standard that is applied in civil cases. *Smith*, 355 S.W.3d at 147-48; *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We examine the entire record for evidence that supports the negative finding. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 387. If no evidence supports the negative finding, then we examine the entire record to determine whether it establishes the contrary proposition as a matter of law. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 387. In reviewing the record, we defer to the jury's determination of the credibility of the witnesses and the weight to give the evidence. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 388.

For a factual sufficiency challenge, the standard of review is whether after considering all the evidence pertaining to the issue at hand, the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 390. We review all the evidence neutrally, but we do not intrude on the jury's role as the sole judge of the weight and credibility given to any witness's testimony. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 390-91.

*Discussion*

After examining the record for evidence that supports the jury's negative finding on this issue, we conclude there is some evidence to support it. McCray testified that immediately before the shooting he saw Hernandez leave Delilah's house and walk across the street. McCray also saw appellant leave the house and follow Hernandez out onto the street. McCray testified that while Hernandez's back was still turned, appellant pulled out a gun and pointed it at Hernandez's back. At this point, Hernandez turned around and saw that appellant was pointing a gun at him. "A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from an adequate cause." *Smith*, 355 S.W.3d at 149. Moreover, we are obligated to defer to the jury's determination of the credibility of the witnesses and the weight to give the evidence. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 388. Based on McCray's testimony, the jury could have concluded that appellant precipitated the confrontation that caused Hernandez's death. We conclude the evidence is legally sufficient to support the jury's negative finding on this issue.

Next, in conducting a factual sufficiency review, we consider all of the evidence relevant to the issue of sudden passion arising from an adequate cause. Delilah testified that on the day of the shooting she had made Hernandez move out of the house. After Hernandez moved out, he called Delilah and threatened to "mess up" her truck and burn the house down, regardless of who

was in it. Delilah called appellant, advised him of these threats, and told appellant to get his siblings out of the house.

Benjamin testified that after Hernandez moved out, he returned and was trying to enter the house. Benjamin claimed that appellant denied Hernandez entry into the house. Appellant then went outside, where Hernandez began attacking appellant and choking him. Appellant was scared, and was falling backwards. Hernandez was angry, and looked like he wanted to kill appellant. As Hernandez and appellant struggled, Hernandez said to appellant, "F you, mother-f'er." Appellant hit Hernandez with the gun. Then, while Hernandez was on top of appellant and choking appellant, appellant shot Hernandez with the gun.

The jury also heard the audiotape of the 911 call appellant made after the shooting. In the audiotape, appellant told the dispatcher that Hernandez had choked him and attacked him.

However, Delilah and Benjamin's testimony was counterbalanced by testimony from McCray stating that appellant initiated the confrontation by pursuing Hernandez out onto the street and pointing a gun at his back. Additionally, Benjamin's testimony and the audiotape from appellant's 911 call indicating that Hernandez was choking and attacking appellant just before the shooting were counterbalanced by evidence showing that appellant sustained no injuries and showed no other signs of having been involved in a struggle like the one described by Benjamin and appellant.

In this case, the jury could have decided to believe McCray's account of the confrontation and the shooting, and to disbelieve Benjamin and appellant's accounts of these events. The jury also could have decided to disbelieve Delilah's account of the events leading up to the shooting, including any threats she claimed were made by Hernandez. As the reviewing appellant court, we cannot intrude on the jury's role as the sole judge of the weight and credibility of the witnesses' testimony. *Smith*, 355 S.W.3d at 148; *Cleveland*, 177 S.W.3d at 390-91.

After reviewing all of the evidence relevant to the issue of sudden passion arising from an adequate cause in a neutral manner, we cannot say that the jury's negative finding on this issue was so against the great weight and preponderance of the evidence as to be manifestly unjust. Issues two and three are overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

Publish