

**NUMBER 13-18-00626-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JOHNATHON COLBY WHITBY,**                                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

**On appeal from the 377th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

Appellant Johnathon Colby Whitby was convicted on two counts of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. In his sole issue, Whitby argues that he received ineffective assistance of counsel. We affirm.

**I. BACKGROUND**

On June 14, 2018, Whitby was indicted for four counts of sexual assault of a child, alleged to have occurred on December 29, 2016: sexual penetration of D.G.'s[1] sexual organ by Whitby's penis (count one), sexual penetration of D.G.'s sexual organ by Whitby's finger (count two), sexual penetration of D.G.'s sexual organ by Whitby's mouth (count three), and sexual penetration of D.G.'s anus by Whitby's penis (count four). Whitby pleaded not guilty to all counts, and the case proceeded before a jury.

Complainant D.G. testified that she met Whitby online via social media. On December 29, 2016, Whitby messaged D.G. and asked her to meet up with him in person. She snuck out of her house and entered Whitby's truck, and they drove around her neighborhood. At the time, D.G. was fourteen years and one month old; Whitby was seventeen years and six months old. According to D.G., she told Whitby that they were not meeting up for sex; nevertheless, after conversing for a while, their conversation turned sexual. Whitby grabbed D.G.'s phone and threw it in the back of the truck. D.G. told Whitby that she wanted to go home, but every time she tried to unlock the truck door, he would lock it again. Whitby told D.G., "suck my dick, and I'll let you go home." D.G. alleged that Whitby grabbed her head and forced her to perform oral sex on him. Whitby then pulled down D.G.'s leggings to perform oral sex on her. D.G. claimed that Whitby next penetrated her sexual organ and her anus with his penis. After Whitby ejaculated, D.G. put her clothes back on and ran home.

After missing school for several days due to pain from the sexual assault, D.G. confided in her mother about what happened with Whitby. D.G's mother took her to be

---

[1] To protect the minor complainant's identity, we will refer to individuals in this case using aliases. *See* TEX. R. APP. P. 9.8.

2

examined by a sexual assault nurse. The nurse later testified that D.G.'s physical trauma was consistent with sexual abuse. D.G. then began sexual assault counseling, and the therapist noted that her behavior was consistent with someone who has experienced sexual assault trauma.

Next, V.C. testified that she and Whitby had a child together and that their relationship has been "[o]n and off for a couple of years." The State published to the jury a recorded phone conversation V.C. had with Whitby while he was incarcerated. During the conversation, Whitby admitted to having sex with D.G. According to V.C., Whitby had also previously confessed to her that he had sexual relations with D.G.

After speaking with his attorney and being admonished by the court, Whitby decided to testify. Whitby claimed that D.G. had known him for a while through mutual friends. He asserted that D.G. was flirting with him so he suggested they meet on December 29, 2016. Another recorded jail phone conversation was entered into evidence, and Whitby admitted that during the call, he attempted to persuade the other person on the phone to contact D.G.'s boyfriend "so that he could ask [D.G.] not to come to court because he could be in big trouble." He denied having oral or anal sex with D.G., claiming that there was no room in his truck for the acts as described by D.G. However, Whitby admitted to having "conventional" sex with D.G. as alleged in count one and he admitted that he knew she was fourteen; however, according to Whitby, the sexual encounter was entirely consensual. He ended his testimony by stating, "I didn't force myself upon her. I'm not that kind of person to force myself on somebody."

The State challenged Whitby's statement that he is not the kind of person that would force himself on a woman. The trial court granted the State's request to ask Whitby

3

about specific extraneous sex offenses he committed against other underage women. Whitby denied having grabbed the breast and buttocks of E.S. while he was in middle school; he asserted that his friend committed the offense and he was simply "in the wrong place at the wrong time." Whitby also denied posting nude pictures of A.P. online and telling her that he would only take them down if she performed sexual favors for him; again, Whitby claimed that he was "in the wrong place at the wrong time." However, Whitby acknowledged that he had been adjudicated for delinquent conduct for posting nude pictures of J.J. online.

The State also called several female witnesses to rebut Whitby's claim that he is not the "kind of person to force [him]self on somebody." First, A.P. testified that she knew Whitby because he was dating her cousin. A.P. claimed that Whitby posted nude pictures of her on Twitter and told her that he would only take them down if she performed sexual acts for him on video chat or in person. E.S. testified that Whitby touched her chest inappropriately on several occasions in middle school, and that as a result, Whitby was sent to an alternative campus as punishment.

The State abandoned count two, and the jury acquitted Whitby on count four; however, the jury found Whitby guilty on counts one and three. At the punishment hearing, J.J. testified that when she was a freshman in high school, she was in a romantic relationship with Whitby. She sent him "topless pictures" but never gave him permission to distribute those photos. Whitby, without permission, posted the pictures to Instagram because J.J. was talking to another boy at school. J.J. testified that Whitby also approached her friend J.C. and threatened to post nude pictures of her online if she did

4

not tell Whitby which boy J.J. was talking to. As a result, charges were brought against Whitby in juvenile court, and he was placed on juvenile probation.

The State also called B.H., who testified that she had also been romantically involved with Whitby; however, she ended the relationship when Whitby demanded to see her phone and forcibly took it from her. B.H. then told Whitby to leave her alone. In response, Whitby claimed that he had secretly recorded a romantic encounter with her and threatened to publish the video to social media.

V.C. testified that on August 19, 2017, Whitby assaulted her by striking her in the face and in the ribs. Whitby was allegedly jealous of a text message V.C. had received from a friend. V.C. claims that similar assaults occurred in March of 2017 and September of 2017 after she refused to let Whitby look at her phone. According to V.C., "right before [Whitby] went to jail," he sent V.C.'s brother a sexually intimate video of V.C.

Whitby's counsel called a probation officer to testify about the conditions of community supervision placed upon sex offenders who are granted community supervision. She testified that remorse is a helpful trait to possess for a candidate hoping to be successful on community supervision.

The jury declined to grant Whitby community supervision and assessed punishment, for both counts one and three, at the maximum twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. The trial court pronounced sentence as assessed by the jury and ordered the sentences to run concurrently. This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Whitby argues that he received ineffective assistance of counsel because his trial counsel was deficient by: (1) "[c]alling [Whitby] to testify"; (2) calling a probation officer to testify at the punishment phase; (3) failing to object when the State argued that Whitby was not a good candidate for probation because he had not shown any remorse; and (4) failing to object to the State's alleged "bolstering" of the probation officer's testimony during closing arguments.

## A. Standard of Review and Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id.*; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.— Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d

6

591, 593 (Tex. Crim. App. 2012).  Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain their reasoning behind their performance.  *See id*.  For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different.  *See Strickland*, 466 U.S. at 687.

## B.  Analysis

Whitby first claims that his counsel was deficient for allowing Whitby to testify; he claims that calling Whitby to testify that "his commission of sexual assault of a child was consensual was an ineffective strategy to mitigate punishment."  However, Whitby did not file a motion for a new trial due to ineffective assistance of counsel.  Because he did not move for a new trial, his counsel was not given an opportunity to explain any reasoning behind his conduct.  *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Thus, we will assume a strategic motive if any can be imagined and find his counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.  *See Andrews*, 159 S.W.3d at 101.

Whitby complains that his counsel was deficient for allowing him to testify on his own behalf because it ultimately did more harm than good by opening the door for the State to introduce evidence of extraneous sexual offenses allegedly committed against

7

other women in order to rebut Whitby's statement that he was not the type of person to force himself on women. Additionally, Whitby claims that admitting to having a sexual encounter with D.G. was an ineffective strategy because lack of consent is not an element of sexual assault with a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2).

However, the record reflects that Whitby conferred with his counsel and was admonished by the trial court before testifying. Whitby acknowledges that his counsel warned him that he was not entitled to an instruction under Penal Code § 22.011(e). *See id.* § 22.011(e) ("It is an affirmative defense to prosecution under Subsection (a)(2) . . . that the actor was not more than three years older than the victim."). There is no indication that Whitby was strong-armed into testifying; rather, the record reflects that Whitby intentionally and voluntarily waived his right against self-incrimination and decided to testify on his own volition. Ultimately, the decision to testify rested solely on Whitby. *See Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009); *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). In fact, trial counsel may be held deficient for depriving a defendant of his right to testify. *See Johnson*, 169 S.W.3d at 235. The decision to allow Whitby to testify was not so outrageous that no attorney would engage in it. *See Andrews*, 159 S.W.3d at 101.

Whitby also claims that his counsel was deficient for calling a probation officer during the punishment phase of trial. However, decisions over presenting witnesses is largely a matter of trial strategy. *See Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Because we do not have a record of counsel's strategy for calling a probation officer during the punishment phase, we will only find counsel's decision deficient if it was so outrageous that no competent attorney would have

8

engaged in it. *See Andrews*, 159 S.W.3d at 101. The Texas Court of Criminal Appeals has held that a defendant may call a probation officer during the punishment phase of trial to help establish the defendant's suitability for community supervision. *See Ellison v. State,* 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). Whitby's counsel might have theorized that Whitby's best chance of receiving probation was by calling a probation officer. Therefore, under the circumstances of this case, we cannot conclude that Whitby's counsel's decision to call a probation officer was so outrageous that no attorney would engage in it. *See id.*; *Andrews*, 159 S.W.3d at 101.

Whitby further complains that his counsel was deficient by failing to object when the probation officer testified that, to be successful on community supervision, a person needs to be remorseful. *See Mares v. State*, 52 S.W.3d 886, 892–93 (Tex. App.—San Antonio 2001, pet. ref'd) (concluding that counsel was deficient where counsel called a probation officer as a witness but then failed to object when the probation officer opined that a person in the defendant's situation would not make a good candidate for community supervision). However, unlike in *Mares*, the probation officer in the present case did not opine about whether a hypothetical person similar to Whitby would do well on community supervision. Instead, the probation officer, calling upon her six years of experience, simply offered her opinion that remorse for one's crimes is a helpful attribute to be successful on community supervision. We cannot conclude that the decision not to object was so outrageous that no attorney would engage in it. *See Andrews*, 159 S.W.3d at 101.

Whitby additionally claims that his counsel was deficient for failing to object during the State's closing arguments at the punishment phase. More specifically, Whitby asserts

9

that his counsel should have objected when the State said during closing, "This is not a defendant that is remorseful and truly apologetic. He testified in guilt/innocence. You got to see him on the stand. Did you see any remorse? Did you see any regret? No. It was just excuses, minimizing, trying to dodge responsibility." However, "[d]uring jury argument, a party may allude to a testifying witness's demeanor if the jury had an equal opportunity to observe the witness." *Orcasitas v. State*, 511 S.W.3d 213, 222 (Tex. App.—San Antonio 2015, no pet.) (quoting *Good v. State*, 723 S.W.2d 734, 736 (Tex. Crim. App. 1986)). Therefore, Whitby's counsel was not deficient for failing to object to said statements. *See Strickland*, 466 U.S. at 687.

Lastly, Whitby argues that his counsel failed to object when the prosecutor stated at closing argument that "[the probation officer] was very honest. There's no hundred percent guarantee with probation. . . . I can give you a hundred percent guarantee . . . if that defendant is sitting in a prison cell, he's not going to rape a woman while he's in that cell." However, "a prosecutor may argue his opinion concerning a witness's credibility or the truth of witness's testimony if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony." *Thomas v. State*, 445 S.W.3d 201, 211 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985)). Whitby does not explain how the prosecutor's statements went beyond reasonable deductions from the evidence or how the statements constituted unsworn testimony. Therefore, we conclude that Whitby's counsel was not deficient for failing to object.

In summary, Whitby's counsel performed within the range of professional norms. *See Strickland*, 466 U.S. at 687; *Andrews*, 159 S.W.3d at 103. Because we conclude

10

that Whitby failed on the first *Strickland* prong, we do not need to analyze the second prong.   *See Mata v. State*, 226 S.W.3d 425, 433 (Tex. Crim. App. 2007) (finding it unnecessary to address the second *Strickland* prong if the first prong has clearly not been met); *see also* TEX. R. APP. P. 47.1.  We overrule his sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of August, 2019.

11