

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00313-CR

---

MARK LONGORIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B3963-1807, Honorable Kregg Hukill, Presiding

---

January 23, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Merely acting in response to provocation by another is not enough to raise the issue of sudden passion. Following an open plea of guilty, Appellant was convicted by the trial court of murder with an affirmative finding on use of a firearm.[1] He was sentenced to confinement for life and assessed a $1,000 fine. By a sole issue, he contends the trial court's rejection of his defense of sudden passion was against the great weight and

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1).

preponderance of the evidence. He seeks reversal of the case and a remand to the trial court for sentencing as a second degree felony.[2] We affirm.

## BACKGROUND

During the morning hours of April 18, 2018, a 911 call was placed to the sheriff's department regarding a body that had been observed in the ditch of a county road by a farm employee. The sheriff drove to the farm and met with the employee who directed him to the location of the body. The sheriff observed the body of a female faced down in the ditch dead from an apparent gunshot wound to her face. She was later identified as Mysti Goddard. Texas Ranger Galvan was asked to assist in the investigation.

The sheriff discovered that Goddard, who had a criminal record, had named Appellant as her emergency contact and he soon became a suspect in her death. Shortly after the murder, Appellant's van was located in Earth, Texas, where Appellant lived with his grandfather. Following a felony stop, Appellant was handcuffed and placed in a patrol unit where he was read his rights and interviewed by Ranger Galvan.

During the interview, Appellant confessed to killing Goddard. Appellant was arrested and charged with murder. During a second interview, Appellant admitted he shot Goddard because she kept "picking" at him and he "lost it." He described her as the type of person who "crawls under your skin at times." He told Ranger Galvan that he kept his shotgun at his parents' home but had placed it in his van a few weeks before the murder to go hunting. He denied that he had planned to shoot Goddard. Pursuant to a search

---

[2] TEX. PENAL CODE ANN. § 19.02(d) (reducing punishment to that of a second degree felony if sudden passion is proven).

2

warrant, the 12-gauge shotgun used to kill Goddard was found in a shed at the home of Appellant's parents.

Via an amended indictment,[3] Appellant was charged with intentionally and knowingly causing Goddard's death by shooting her in the head with a firearm. At trial, the evidence showed that Appellant was in an unhealthy relationship with Goddard. They both used methamphetamine and engaged in acts of domestic violence against each other.

According to the testimony, after Appellant shot Goddard, he drove to his parents' home to eat and return the shotgun. Afterward, he went home to sleep. The next morning, he returned to his parents' home where he had breakfast and showered. His mother testified that he was acting normal but confirmed that he had a temper.

Appellant's cousin, who was with him when he was first detained, testified that a few weeks before the murder, Appellant was "mad at that bitch" for making disparaging remarks about his family. When asked if Appellant wanted to "go f--- up [Goddard]," the cousin responded affirmatively. However, he testified that Appellant never told him that he had killed Goddard.

Appellant's defensive strategy was that he killed Goddard under the immediate influence of sudden passion arising from an adequate cause. To support his defense, he relied on a traumatic brain injury he sustained in a vehicular accident in 1997, when he was just sixteen. According to expert testimony from Dr. John Fabian, a forensic psychologist and neuropsychologist, Appellant's IQ and memory had been affected by

---

[3] The indictment was amended to reflect the correct spelling of Goddard's name.

the brain injury. But notwithstanding the brain injury, Appellant had managed to graduate from high school and had maintained gainful employment for a decade following the brain injury. Dr. Fabian confirmed that Appellant was a heavy drug user which exacerbated his brain injury and his mental condition. He also testified that Appellant suffers from various mental health issues and exhibits suicidal tendencies.

Dr. Fabian testified that Goddard's provocation of Appellant opened an emotional wound. He opined that Appellant's severe brain injury, amplified by his drug use and mental health issues, caused him to "snap" and shoot Goddard. During cross-examination, Dr. Fabian testified that Appellant was aware of his issues but had difficulty controlling them. He ruled out insanity as a mitigating circumstance due to Appellant's drug use. He further testified that methamphetamine use would have inhibited Appellant from knowing the consequences of his actions and he would have been unable to distinguish right from wrong. When asked whether Appellant had acted under the immediate influence of sudden passion arising from an adequate cause, he answered affirmatively.

To mitigate his punishment, Appellant testified and described living with the consequences of his traumatic brain injury. He recounted that he had been romantically involved with Goddard beginning in 2016, but described the relationship as consisting of partying and methamphetamine use. He admitted they often fought, and he had a prior conviction for assaulting her. In 2017, Goddard entered a rehabilitation facility and Appellant went to Minnesota where he had previously resided. He later returned to Texas and reconnected with her.

4

Appellant described Goddard as a "meth head" and he became agitated with her when she completed a factory reset of his cell phone. On the night of the murder, he wanted to "drop her off and clean [his] hands of her" and drive her back to Amarillo because she was making disparaging remarks about him and his family. During the drive, he exited the highway and drove down a dirt road "to calm her down." He pulled over and took his shotgun out of the back of the van and claimed he was going to shoot himself and told her to "go away. You better run." He then testified as follows:

> She said, your just like your f------ family. Bam. Instinct. I didn't think, it just happened. She was always talking trash on my family; they're good people.

Instead of shooting himself, he threatened Goddard with the shotgun, and she responded that "she would be with her daughter," who had previously passed away. His testimony continued that after shooting Goddard, he placed the shotgun back in his van and drove to his parents' home, stored the shotgun, and returned home to sleep.

### APPLICABLE LAW—SUDDEN PASSION

A defendant has the burden to prove the issue of "sudden passion" arising from an "adequate cause" by a preponderance of the evidence. *Reese v. State*, No. 07-19-00253-CR, 2020 Tex. App. LEXIS 3771, at *19 (Tex. App.—Amarillo May 4, 2020, pet. ref'd) (mem. op., not designated for publication). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a

5

person of ordinary temper, sufficient to render the mind incapable of cool reflection." § 19.02(a)(1). It contains both objective and subjective components. *Reese*, 2020 Tex. App. LEXIS 3771, at *19. "It is objective because it views the alleged provocation through the eyes of the ordinary [person]." *Id.* at *19–20. Evidence of a cause which produced anger, rage, resentment, or terror in the accused because of the accused's susceptibilities "is not sufficient unless the cause would also produce the response in an ordinary person." *Id.* at *20. However, adequate cause is also subjective because the factfinder must view the circumstances from the actor's standpoint in order to determine "the condition of the mind of the accused at the time of the offense . . . ." *Id.*

The core concept of "sudden passion" is that at the moment of the killing the actor's mental state rendered him incapable of rational thought and collected action. *See Van Swearingen v. State*, 270 S.W.3d 804, 820 (Tex. App.—Austin 2008, pet. ref'd). Merely acting in response to provocation by another is not enough to raise the issue of sudden passion. *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003); *Perez v. State*, 323 S.W.3d 298, 305 (Tex. App.—Amarillo 2010, pet. ref'd).

## STANDARD OF REVIEW

Sudden passion, akin to an affirmative defense, is a mitigating circumstance that must be established by a preponderance of the evidence during the punishment phase of trial. *See Reese*, 2020 Tex. App. LEXIS 3771, at *19. *See also Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990) (adopting the civil standard of factual-sufficiency review for affirmative defenses). Even after the Court of Criminal Appeals abolished factual sufficiency review in criminal cases in *Brooks v. State*, 323 S.W.3d 893,

6

912 (Tex. Crim. App. 2010), an affirmative defense may still be evaluated for legal and factual sufficiency of the evidence. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015).

Where, as here, Appellant challenges only the factual sufficiency of the evidence, we examine the rejection of an affirmative defense by viewing the entirety of the evidence in a neutral light but may not usurp the function of the factfinder by substituting our judgment in place of the factfinder's assessment of the weight and credibility of the witnesses' testimonies. *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). An appellate court may reverse a conviction and remand the case for a new trial only if it finds the evidence supporting the affirmative defense so greatly outweighs the State's contrary evidence making the verdict manifestly unjust, conscience-shocking, or clearly biased. *Id.* at 671.

## ANALYSIS

By his sole issue, Appellant contends the trial court's rejection of a finding of sudden passion is against the great weight and preponderance of the evidence. He asserts that his expert's testimony was not rebutted by the State's evidence. We disagree with Appellant's assessment of the trial court's rejection of his claim of sudden passion.

Appellant's argument disregards the evidence presented that negates a finding of sudden passion. Appellant had a short temper and a history of domestic violence with Goddard, including a prior conviction for assaulting her. Evidence of prior abuse negates a finding of sudden passion. *See Bradshaw v. State*, 244 S.W.3d 490, 503 (Tex. App.—Texarkana 2007, pet. ref'd).

7

Appellant testified that he became angry when Goddard completed a factory reset of his phone. Ordinary anger that does not render the mind incapable of cool reflection does not constitute adequate cause. *Hernandez v. State*, 127 S.W.3d 206, 213–14 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Neither does his testimony that she was "annoying" and "a pain in the ass" rise to the level of adequate cause in a person of ordinary temper. *Gaston v. State*, 930 S.W.2d 222, 226 (Tex. App.—Austin 1996, no pet.) (mem. op., not designated for publication) (noting that taunting and nagging do not equate to adequate cause sufficient to establish sudden passion).

Appellant's regular use of methamphetamine, which Dr. Fabian testified exacerbated the symptoms of Appellant's brain injury, cannot justify a finding of sudden passion. *See Fair v. State*, No. 03-05-00348-CR, 2006 Tex. App. LEXIS 6314, at *8 (Tex. App.—Austin July 21, 2006, pet. ref'd) (mem. op., not designated for publication) (rejecting self-defense and sudden passion as mitigating circumstances when murder was committed under the influence of drugs). Appellant's drug use and its consequences were circumstances of his own making and did not support a finding of sudden passion arising from an adequate cause. *Orcasitas v. State*, 511 S.W.3d 213, 225–26 (Tex. App.—San Antonio 2015, no pet.).

Appellant's cousin testified that Goddard had made disparaging remarks about Appellant's family two weeks before the murder and had angered Appellant by doing so. Yet, Appellant testified that he snapped when he shot her for making disparaging remarks at the time she was killed. Sudden passion was not established by Goddard's disparaging remarks at the time of the offense when she had made similar remarks in the past. *Contreras v. State*, 73 S.W.3d 314, 320–21 (Tex. App.—Amarillo 2001, pet. ref'd) (noting

that former provocation does not support a finding of sudden passion). An ordinary person would not have committed murder based on an individual making disparaging remarks. Additionally, anger from a culmination of events does not rise to the level of adequate cause. *Naasz v. State*, 974 S.W.2d 418, 425 (Tex. App.—Dallas 1998, pet. ref'd).

Examining the entire record in a neutral light, we disagree with Appellant's contention that his expert's opinion that he murdered Goddard under the immediate influence of sudden passion was not rebutted by the State. The factfinder was free to make its own determination of Appellant's credibility and reject his version of events if it did not believe he was telling the truth. *Trevino*, 157 S.W.3d at 822. We do not find the verdict to be so manifestly unjust, conscience-shocking, or clearly biased as to require reversal of Appellant's conviction. We conclude the trial court's negative finding on the issue of sudden passion is not against the great weight and preponderance of the evidence. Appellant's sole issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex L. Yarbrough
Justice

Do not publish.

9